IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Magistrate Judge Boyd N. Boland

Civil Action No. 09-cv-00041-WDM-BNB

COPIC INSURANCE COMPANY,

Plaintiff,

v.

WELLS FARGO BANK, N.A.,

Defendant.

_____

## ORDER
_____

This matter arises on the following:

(1)     **Plaintiff's Motion for Protective Order That, With Limited Exception, Depositions of Morgan Stanley and Nuveen Not Be Had** [Doc. # 118, filed 3/1/2010] (the "Motion for Protective Order"); and

(2)     **Plaintiff's Second Motion for a Protective Order to Stay Depositions of Morgan Stanley and Nuveen Until After Court's Hearing on Plaintiff's Motion for Protective Order** [Doc. # 137, filed 3/8/2010] (the "Motion to Stay Depositions").

I held a hearing on the motions on March 17, 2010, and took them under advisement. The Motion for Protective Order is GRANTED IN PART as specified, and the Motion to Stay Depositions is DENIED as unnecessary.

I.

Defendants (collectively "Wells Fargo") served sweeping Rule 30(b)(6) deposition notices and subpoenas on Nuveen Investment Solutions, Inc. ("Nuveen"), and Morgan Stanley Investment Management, Inc. ("Morgan Stanley"). Wells Fargo informs me that Nuveen is COPIC's investment advisor for all of COPIC's investments, including equity and fixed income investments. Transcript of Proceedings [Doc. # 173, filed 3/23/2010](the "3/17 Trans.") at p. 37 lines 11-15; p. 38 lines 15-25. I am also informed by Wells Fargo that Morgan Stanley is one of COPIC's investment managers for fixed income investments. Id. at p. 38 lines 15-25. The discovery directed to Nuveen and Morgan Stanley, which is the subject of the Motion for Protective Order, seeks information about investments made by COPIC which are distinct from the securities lending program managed by Wells Fargo, which forms the basis for COPIC's claims here.

II.

COPIC moves for a protective order that most of the Nuveen/Morgan Stanley discovery not be had, arguing that it is irrelevant and not likely to lead to the discovery of admissible evidence. COPIC's Motion for Protective Order, which is succinct if nothing else, argues:

> On February 24, 2010, this Court denied Wells Fargo's Motion to Compel discovery into COPIC's investments outside of the Wells Fargo securities lending program and ordered that COPIC's other investments are irrelevant, beyond the parameters of this lawsuit, and that further inquiry into the subject was not reasonably calculated to lead to the discovery of admissible evidence. Specifically, the Court stated:

> "'I disagree that what--how COPIC invested in other matters
> unrelated to its expectations and obligations in connection with
> this investment has anything to do with this case.'"
> \* \* \*
> The scope of these proposed depositions [of Nuveen and Morgan
> Stanley] is staggering and covers the exact areas this Court has
> ruled inappropriate.

Motion for Protective Order [Doc. # 118] at pp. 1-2.

Wells Fargo is critical of COPIC's selective quotation of my February 24 Order. More fully, that Order provided:

> Mr. Hagstrom went [on] at some length at the beginning of our
> discussion this morning . . . to point out that *this is a contract case*
> which has certain obligations and burdens, *and that's correct*. I
> disagree that what--how COPIC invested in other matters unrelated
> to its expectations and obligations in connection with this
> investment has anything to do with this case.

Wells Fargo Bank, N.A.'s Opposition [Doc. # 146, filed 3/12/2010] (the "Response")(original emphasis) at p. 4.

Sometimes Wells Fargo is critical of my February 24 Order insofar as it characterizes this as a "contract case," noting that the plaintiff has also pled non-contract tort claims. Id. at pp. 4-6. Other times, Wells Fargo agrees that this is a contract case. Id. at p. 2 (noting that the February 24 Order "was based on this Court's characterization of this as a 'contract case,'" and stating that "Wells Fargo agrees with the Court's characterization"). It cannot be disputed, however, that Wells Fargo itself has characterized this as a contract case and has urged the court to see it that way. For example, at a hearing on February 24, 2010, Wells Fargo's counsel argued:

> As hopefully you got from the briefs that we filed, this is a contract
> case.
> \* \* \*

> Under the declaration of trust, which is the controlling document for purposes of investments in the trust, there are provisions that limit liability to gross negligence. . . .

Transcript of Proceedings [Doc. # 134, filed 3/4/2010](the "3/4 Trans.") at p. 23 line 17 through p. 24 line 21.

The question of relevance at issue here does not depend on whether the plaintiff is asserting claims sounding in contract or tort, however. I find that COPIC's investment decisions concerning other, unrelated investments made for different purposes and guided by different mandates, and the performance of those unrelated investments, are not relevant to Wells Fargo's duties or COPIC's expectations under the Wells Fargo securities lending program, nor are they reasonably calculated to lead to the discovery of admissible evidence.

### III.

The Wells Fargo securities lending program at issue in this case is a complicated and unique investment. Wells Fargo serves as a custodial bank for COPIC's securities portfolio. Amended Complaint [Doc. # 11] at ¶17. It charges a fee for those services. The Wells Fargo securities lending program is designed to provide "'institutional clients the opportunity to increase portfolio return and offset custody fees. . . .'" Id. at ¶26(a). It earns, in the following manner, a "nominally extra return, " id. at ¶22, in order to pay the custody fees:

> There are two main categories of investments involved in securities lending.
>
> a. Investors' securities: The first type of investment is the investors' own securities portfolios. The bank (or other financial institution) [here, Wells Fargo] that sponsors the securities lending program keeps its investor-clients' portfolios [here, COPIC] in custodial accounts and lends these securities to brokers, who need temporary use of the securities to support their trading activities.

4

> b. Collateral investments: The second type of investment is made with the collateral that the bank (or other financial institution) receives from the brokers who borrow the securities. To protect the investors in case the brokers default and do not return the securities, the bank receives collateral, generally cash, from the brokers. To underscore the conservative nature of securities lending, the brokers must typically provide cash collateral that is worth more than the securities they borrow (in Wells Fargo's case, 102% to 105% of the value). The bank then invests this collateral until the securities are returned (when the securities are returned, the bank returns the cash collateral to the broker). Because the loan of securities is temporary, and because the bank must sell the collateral investment to re-pay the brokers in cash when the securities are returned, the collateral investments must be safe and liquid.

Id. at ¶24 (internal footnote omitted). I am informed by Wells Fargo that the mandate or objective of the Wells Fargo securities lending program is to achieve a positive return compared to the daily Fed Funds interest rate. 3/17 Trans. [Doc. # 173] at p. 33 lines 12-13; p. 39 lines 20-21; see also Amended Complaint [Doc. # 11] at ¶72. Earnings from the collateral investments described in ¶24(b) of the Amended Complaint are available to pay Wells Fargo's custody fees. Id. at p. 21 lines 2-23.

IV.

Discovery in a civil case is broad, but it is not without limit. Rule 26(b)(1), Fed. R. Civ. P., requires that discovery is limited to information "relevant to any party's claim or defense" or "reasonably calculated to lead to the discovery of admissible evidence." In this case, I find that information concerning investments entirely unrelated to the Wells Fargo securities lending program is not relevant to any matter in dispute, nor is it reasonably calculated to lead to the discovery of admissible evidence. That unrelated, irrelevant discovery shall not be had.

The lack of relevance is obvious. An investor may select a conservative, highly liquid investment vehicle to invest cash safely and securely for a short period of time--for example, until the money is needed for a closing on a house. The same investor may select more speculative long-term investments in connection with a retirement account because the speculative investments have a potential for greater return. The same investor may select an array of other investments for a variety of purposes, e.g., holiday funds, vacation-of-a-lifetime funds, college funds, etc. Information about how and why the investor chose one investment for one purpose and how that investment performed is not relevant to the investor's selection, and the performance of, an entirely unrelated investment made for a different purpose.

That is exactly the case here. COPIC invested in the Wells Fargo securities lending program with the objective of earning a nominal return in order to pay the costs of Wells Fargo's cutodial services. The mandate of the Wells Fargo securities lending program was to surpass the daily Fed Funds interest rate. That does not mean that COPIC selected all of its investments, or even any other investment, to obtain a nominal return or merely to surpass the daily Fed Funds interest rate. Nor would the fact that COPIC made speculative investments for other purposes have any bearing on the purpose of COPIC's investment in the Wells Fargo securities lending program, Wells Fargo's duties under that program, or COPIC's expectations with respect to that program.

For example, COPIC with the assistance of Morgan Stanley made other fixed fund investments (the "Morgan Stanley investments"). The Morgan Stanley investments were not intended to achieve earnings to pay COPIC's custodial fees--its investments were for other, unrelated purposes. The mandate of the Morgan Stanley investments was in no manner tied to

6

the daily Fed Funds interest rate and, instead, Morgan Stanley's benchmark was to surpass the performance of investments "42% in the Barclays Capital US Intermediate Government/Credit Index and 58% in the Barclays Capital US Municipal 1 to 10-year Index." Appendix I [Doc. # 160-2, filed 3/17/2010] at ¶1; 3/17 Trans. [Doc. # 173] at p. 40 lines 2-8. Wells Fargo could not compare the historical performance of the Morgan Stanley benchmark to the daily Fed Funds interest rate. 3/17 Trans. [Doc. # 173] at p. 40 line 24 through p. 41 line 5. They are apples and oranges.

Nuveen is COPIC's investment advisor for all investments, including both equities and fixed funds. Id. at p. 38 lines 15-25. Wells Fargo's counsel conceded at argument that this case has nothing to do with equity investments. Id. at p. 36 lines 20-22; p. 37 lines 21-23. Nor is there any indication that the fixed funds investments approved by Nuveen generally involved securities lending programs similar to the Wells Fargo program.

Without some evidence establishing that the Wells Fargo securities lending program, on the one hand, and the Nuveen/Morgan Stanley investments, on the other hand, were for the same purposes or generally tied to the same performance criteria or mandate, it cannot be said that one is relevant to the other. And there is no such evidence here.

Wells Fargo may inquire of Nuveen and Morgan Stanley about all matters concerning COPIC's involvement in the Wells Fargo securities lending program. Wells Fargo may also inquire about any other securities lending program in which COPIC participated, which I find are sufficiently similar investments that information concerning them either is relevant to issues in this case or is likely to lead to the discovery of admissible evidence. Thus, Wells Fargo may inquire of Nuveen and Morgan Stanley about the subpoena categories numbered 6, 7, 8, 15, 16,

17, and 18. Wells Fargo also may inquire about subpoena categories numbered 10 and 11 to the extent they concern securities lending programs. In addition, the efforts of Nuveen and Morgan Stanley to identify, search for, collect, and locate documents already produce in discovery and their authenticity is relevant or reasonably calculated to lead to the discovery of admissible evidence, and Wells Fargo may inquire of Nuveen and Morgan Stanley about the information identified in subpoena category number 20.

V.

The Motion for Protective Order [Doc. # 118] is a motion under Rule 26(c) directed at the depositions of Nuveen and Morgan Stanley and filed before those depositions commenced. Local rule of practice 30.2A, D.C.COLO.LCivR, provides:

> Pending resolution of any motion under Fed. R. Civ. P. 26(c) or 30(d), no party, attorney, or witness is required to appear at the deposition to which the motion is directed until the motion has been resolved. The filing of a motion under either of these rules shall stay the discovery to which the motion is directed until further order of the court.

Filing the Motion for Protective Order stayed the Nuveen and Morgan Stanley depositions. Consequently, the Motion to Stay Depositions [Doc. # 137] was unnecessary.

VI.

IT IS ORDERED that the Motion for Protective Order [Doc. # 118] is GRANTED IN PART, as specified above.

IT IS FURTHER ORDERED that the Motion to Stay Depositions [Doc. # 137] is DENIED as unnecessary.

Dated March 24, 2010.

BY THE COURT:

s/ Boyd N. Boland
United States Magistrate Judge